## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**KEITH CHAVEZ**,

      Plaintiff,

v.                                                   No. Civ. 11-651 LH/SMV

**BOARD OF COUNTY COMMISSIONERS**
**OF BERNALILLO COUNTY, NEW MEXICO;**
**SANFORD "SANDY" FISH, Director of Planning,**
**in His Individual and Official Capacities; Sheriff of**
**Bernalillo County, SERGEANT P. CHARLTON; and**
**DETECTIVE J. M. GUIILMETTE, employees of the**
**Bernalillo County Sheriff's Department, in Their**
**Individual and Official Capacities; TERI CHAVEZ, in**
**Her Individual Capacity and as Employee of Vaughn Realty;**
**VAUGHN REALTY; ROBERT RAYNOR, in His Individual**
**Capacity and as an Agent of R2 Architectural Design & Consulting,**
**a business organized and doing business under the laws of the State of**
**New Mexico,**

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT
## IN FAVOR OF THE COUNTY DEFENDANTS,
## DISMISSING CASE AGAINST TERRY CHAVEZ, and
## ORDER TO SHOW CAUSE

**THIS MATTER** comes before the court on County Defendants'[1] Motion for Summary

Judgment (Doc. 32) and on Defendant Terry Chavez's motion to dismiss for improper service (Doc.

40).  The Court will grant the motions and will also require Plaintiff to show cause why his claims

against Vaughn Realty should not be dismissed with prejudice, due to his complete failure to allege

any facts to support his cause of action against Vaughn Realty.

---

[1]  The "County Defendants" collectively referred to herein, are the first four named Defendants in this matter, to-wit: Board of County Commissioners of Bernalillo County, New Mexico; Sanford "Sandy" Fish; Sergeant P. Charlton; and, Detective J.M. Guilmette.

### UNDISPUTED MATERIAL FACTS AND PROCEDURAL HISTORY

The County Defendants have set forth the following undisputed facts. Defendants erroneously repetitively numbered two paragraphs in their motion, thus the Court has added a letter to the repetitive numbers as demonstrated by the bracketed letters below.

1. Plaintiff was employed by Bernalillo County as an Environmental Engineering Technician with the Office of Environmental Health. Am. Compl., p. 3, ¶ 11.

2. Defendant Terry[2] Chavez is a licensed real estate agent employed by Vaughn Realty. *Id.*, p. 2, ¶ 8.

3. Detective Guilmette is a full-time peace officer employed with the Bernalillo County Sheriff's Department and trained in the investigation of "White Collar Crimes." *See,* Criminal Complaint/Arrest Warrant Affidavit, dated July 17, 2009, Exhibit 1, p. 1.

2[a]. On July 7, 2009, Sergeant Charlton informed Detective Guilmette of a possible bribery case involving Plaintiff who had offered to clear up environmental permits for Ms. Chavez's clients in exchange for $500.00. *Id.*

3[a]. Detective Guilmette contacted Ms. Chavez, and interviewed her regarding her allegations the following day. *Id.*

4. During the interview, Ms. Chavez informed Detective Guilmette that during a lunch meeting with Plaintiff, Plaintiff offered to clear up issues her clients were having with the Office of Environmental Health for $500.00. *Id.* at p. 2.

5. Detective Guilmette asked Ms. Chavez if she was willing to speak with Plaintiff again to see if he would make another offer and she agreed. *Id.*

6. Ms. Chavez arranged to meet with Plaintiff. Detective Guilmette provided Ms. Chavez with five One Hundred Dollar bills after having recorded the serial numbers of each bill. *Id.*

7. Ms. Chavez met with Plaintiff and offered him the $500.00. Plaintiff accepted the money and approved certain affidavits that were needed to clear the issues with the Office of Environmental Health. *Id.*

8. After Ms. Chavez left her meeting with Plaintiff, Detective Guilmette made contact with Plaintiff and retrieved five One-Hundred dollar bills from the front pocket of Plaintiff's pants. The serial numbers on the bills matched those of the bills Detective Guilmette had provided to Ms. Chavez. *Id.*, p. 3.

9. Plaintiff was arrested by the Bernalillo County Sheriff's Department. Am. Compl., p. 3, ¶ 15.

10. Plaintiff was imprisoned and prosecuted. *Id.*, p. 7, ¶ 44.

---

[2] Although Plaintiff spells Ms. Chavez's first name as "Teri," she spells her name "Terry," *see* Doc. 40, and the Court will use this latter spelling in this Memorandum Opinion and Order.

11.    Plaintiff was indicted by a grand jury. *Id*., at p. 4. During the trial, Plaintiff did not contest probable cause and the case was not dismissed for lack of probable cause. *See* State of New Mexico Case Detail, Exhibit 2, p. 4.

12.    Plaintiff was acquitted by the jury. *Id*., p. 1.

13.    Following his arrest, Plaintiff was terminated from his position at the Office of Environmental Health. Am. Compl., p. 4, ¶ 24.

Doc. 32.

In his Response Brief, Plaintiff does not materially contest these undisputed facts. Plaintiff does not dispute that he and Terry Chavez discussed a bribe in exchange for preparing permits at a lunch meeting that occurred a number of days before the investigation and his arrest. He insists, however, that, at the meeting, he orally rejected Ms. Chavez's offers of a "bribe" in exchange for his preparing affidavits to "clear the permits," and additionally states that he "spoke with Sanford Fish and George Schroder regarding [Terry Chavez] offering me money to clear the permits she wanted," before he was arrested. Keith Chavez Aff., Doc. 37-1, ¶¶ 4, 6. Plaintiff does not dispute that, after the lunch meeting where a bribe was first discussed, Ms. Chavez "went and discussed the false bribery accusation with Robert Raynor and they went to the Director of Planning Sanford Fish, [and] he then proceeded to contact the County Attorney's Office. The Sheriff was then notified of the alleged allegations." *Id.*, ¶ 6. He also admits that Detective Guilmette "and Ms. Chavez had been recording [the] meetings that were arranged between me and her" after that lunch meeting where the bribe was initially discussed. *Id.*, ¶ 7. Plaintiff states that, on the day of his arrest, "Ms. Chavez met with me to go over an affidavit that was needed to provide the land owners time to bring their property into compliance with County Ordinances;" that she again offered him the bribe while they were in his office but that he "did not respond to the solicitations;" that he prepared the necessary documents to obtain the permits; and, that he and Ms. Chavez then "went to the elevator and she handed me the money and I took it as a spontaneous reflex." *Id.*, ¶ 9.

Detective Guilmette swore in his criminal complaint that Ms. Chavez recorded her conversation of July 17, 2009 with Plaintiff; that Detective Guilmette heard Plaintiff state that he remembered the lunch conversation during which Plaintiff had told Ms. Chavez that, "for $500 he would make the deal bulletproof;" that Plaintiff reminded Ms. Chavez that they "had a deal" when she asked if he would be mad if she didn't pay him for "work[ing] out the logistics of the deal;" and, that Plaintiff told Ms. Chavez to wait to give him the money until they got in the elevator.  Crim. Compl./Arrest Warrant Aff., Doc. 32-1.  It is undisputed that Plaintiff then returned to his office, and that Detective Guilmette retrieved the marked money and arrested him, after ascertaining from Ms. Chavez that Plaintiff had accepted the money as a bribe.  Keith Chavez Aff., Doc. 37-1, ¶ 15.

Plaintiff's sparse factual basis in the Amended Complaint is comprised of allegations that Ms. Chavez and Robert Raynor "conspired" "to suggest and pursue the idea that the Plaintiff was taking or soliciting bribes" to get Plaintiff arrested so that he would lose his job "so that a subdivision project might go forward," Am. Compl., ¶¶ 16, 19; that Ms. Chavez and Mr. Raynor then approached Defendants Fish and Charlton, who joined the "conspiracy," apparently by approving of an investigation, *id.,* ¶ 17; and that Detective "Guilmette used unfair and unlawful procedures in investigating the Plaintiff in this matter" because he used a "sting" operation in which "Defendant Chavez would approach Plaintiff, offer him money [and] get him to take money." *Id.*, ¶¶ 20-23.

Count I alleges a violation of civil rights under 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that "Defendant Sheriffs,"- *i.e.*, Sergeant Charlton and Detective Guilmette – and "Defendant Bernalillo County" wrongfully deprived him of his "rights to equal protection under the law and due process of law, that Plaintiff was wrongfully accused of a crime, wrongfully imprisoned, and that

4

his employment was terminated as a result of the deprivation of his rights by the Defendants."  Am. Compl., ¶ 33.

Count II, a claim for "malicious abuse of process under 42 U.S.C. § 1983," is brought only against Detective Guilmette.[3]  Plaintiff alleges that Detective Guilmette violated his due-process rights by acting with malice in "filing a false affidavit . . . in support of his filing of false criminal charges;" that he "lost, destroyed and falsified evidence in the pursuit of a conviction;" and that "[t]here was no probable cause to support the original arrest, continued confinement, or prosecution of Plaintiff."  Am. Compl., ¶ ¶ 37-42.  No factual allegations indicate  how Defendant Guilmette falsified his affidavit.

Count III is a state-law claim for "tortious interference with contractual rights."  It is brought only against Terry Chavez, Robert Raynor, and Vaughn Realty.  *Id.*, ¶ ¶ 48-52.  Plaintiff states that these Defendants "were aware of the existing contractual relationship of employment that existed between Defendant Bernalillo County and Plaintiff" and that they "intentionally and maliciously sought [to] and did in fact interfere with that relationship[,] and caused the Defendant Bernalillo to terminate [Plaintiff's] contract of employment . . . . " *Id.*, ¶ 51.

## ANALYSIS

On a motion for summary judgment, the Court

view[s] the evidence and its reasonable inferences in the light most favorable to the non-movant.  Summary judgment is appropriate if "the movant shows that there is

---

[3] Paragraph 35 of the Amended Complaint  states that this count is brought "pursuant to the New Mexico Tort Claims Act."  In its February 28, 2012 Memorandum Opinion and Order, Doc. 24, this Court had allowed Plaintiff to file an amended complaint, containing a federal § 1983 malicious prosecution claim (*i.e.*, specifically not a claim under the New Mexico Tort Claims Act). Consequently, the Court will limit its analysis herein to the § 1983 malicious prosecution claim.

no genuine dispute as to any material fact and the movant is entitled to judgment as
a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is genuine if the evidence
is such that a reasonable jury could return a verdict for the non-moving party on the
issue.  An issue of fact is material if under the substantive law it is essential to the
proper disposition of the claim.

*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (internal quotation marks and

citations omitted).  The ultimate inquiry in a summary-judgment analysis is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986).[4]

> When a defendant asserts qualified immunity at the summary judgment stage,
> the burden shifts to the plaintiff, who must clear two hurdles to defeat the
> defendant's motion.  The plaintiff must demonstrate, on the facts alleged, that (1) the
> defendant violated a constitutional right, and (2) the right was clearly established at
> the time of the alleged unlawful activity. . . . .
>
> A constitutional right is clearly established when, at the time of the alleged
> violation, the contours of the right were sufficiently clear that a reasonable official
> would understand that his actions violate that right. . . . While the plaintiff does not
> have to present a case with an identical factual situation, the plaintiff must show
> legal authority making it apparent that in the light of pre-existing law a reasonable
> official would have known that the conduct in question violated the constitutional
> right at issue.  In determining whether a right was clearly established, we look for
> Supreme Court or Tenth Circuit precedent on point or clearly established weight of
> authority from other courts finding the law to be as the plaintiff maintains.

*Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (internal quotation marks and citation

omitted); *Storey v. Taylor*; 696 F.3d 987, 992 (10th Cir. 2012).  The qualified-immunity doctrine

"provides ample protection to all but the plainly incompetent or those who knowingly violate the

law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and is intended to protect officers not only from

---

[4]  "Rule 56 was amended, effective December 1, 2010.  Under the amended rule, the standard previously
enumerated in subsection (c) was moved to subsection (a), and the term genuine 'issue' became genuine 'dispute.'  *See*
Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments).  However, the 'standard for granting summary
judgment remains unchanged.'  *Id.*"  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 n.8 (10th Cir. 2011)

"costly and harassing litigation," but also so that officers will not be unduly "inhibit[ed] . . . in performing their official duties," *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001).

## I.    The County Defendants are entitled to summary judgment on the equal-protection claim.

"[E]qual protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Oregon Dept. of Agriculture.*, 553 U.S. 591, 601 (2008).  Defendants argue, and the Court agrees, that Plaintiff's Amended Complaint states no facts indicating that the Board or the individual County Defendants created a classification that affected Plaintiff differently from other employees or persons.

In response, Plaintiff contends that his factual scenario fits into the "class of one" equal-protection theory, *see* Doc. 37 at p. 7.  Plaintiff relies upon this theory wherein "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out." *Engquist*, 553 U.S. at 601.  Plaintiff states that

> his lawful execution of his employment duties caused him to be an obstacle to a contemplated residential subdivision development plan, and that he was "set up," charged and prosecuted so that he might be removed as an obstacle to the plan.  A plan to circumvent the law in real estate development satisfies the definition of a "criminal enterprise." Certainly the furtherance of a criminal enterprise does not constitute a "rational basis" for the treatment to which Mr. Chavez was subjected. Moreover, the desire to further a criminal enterprise by having a public employee wrongfully prosecuted satisfied the definition of "malice or ill will" for purposes of the requisite legal analysis.

Doc. 37 at 7-8.

The Court notes however that "[a] plaintiff raising a class of one claim must proceed through essentially the same two steps a plaintiff alleging a class-based claim must.  First, the class of one

plaintiff must show he . . . was intentionally treated differently from others similarly situated. Second, when intentional discrimination is shown to exist the plaintiff must prove there is no rational basis for it." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012) (internal quotation marks and citation omitted); *see Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-17 (10th Cir. 2011) ("The latitude afforded police officers . . . and other, similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed."). "It is . . . imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).

Plaintiff fails to allege in his Amended Complaint, nor does he present any proof that there were other similarly-situated employees or individuals suspected of requesting bribes who were treated differently than he was treated. Further, insofar as Plaintiff is complaining of a class-of-one violation in his public employment, "the class-of-one theory of equal protection has no application in the public employment context." *Engquist*, 553 U.S. at 607.

Plaintiff has failed to establish a violation of his constitutional right to equal protection. Therefore the County Defendants are entitled to qualified immunity and judgment as a matter of law on this claim. The equal-protection claim must be dismissed with prejudice against all County Defendants.

**II.    The County Defendants are entitled to summary judgment on the due-process/malicious-prosecution claims.**

Plaintiff's due-process claim is poorly developed in his Amended Complaint. It is included

8

with the equal-protection claim in Count I, without setting forth specific facts to support it. *See* Am. Compl., ¶ 33. The parties agree that analysis of Plaintiff's due-process claim is subsumed under his malicious-abuse-of-process claim, which is also brought under § 1983. *See* Resp. Br., Doc. 37 at 8 ("The County Defendants collapse their Due Process analysis with their analysis of Plaintiff's Malicious Abuse of Process claim, essentially admitting that survival of the Malicious Abuse of Process claim entails survival of the Due Process claim. Consequently, the analysis herein is similarly combined."). *See also Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008)("After the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim. . . . [A] due process claim for malicious prosecution arises only once "the original action," whatever form it has taken, has "been terminated in favor of the plaintiff." (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004)).

A § 1983 claim based on an allegedly malicious prosecution includes the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Defendants contend that it cannot be disputed that Officer Guilmette had probable cause to arrest Plaintiff.

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause exists to arrest if "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee

has committed or is committing an offense." *Tanberg v. Sholtis*, 401 F.3d 1151, 1159 (10th Cir. 2005) (internal quotation marks omitted). "The existence of probable cause depends on the arrestee's behavior and the officer's knowledge of it." *Id.* at 1160.

There is no dispute that Ms. Chavez accused Plaintiff of requesting a bribe; that she reported it to his supervisor; that the supervisor then reported the allegation to the sheriff's office; that Detective Guilmette listened through a recording device while Plaintiff and Ms. Chavez again discussed the bribe in Plaintiff's office while Plaintiff was preparing the affidavits; that Ms. Chavez told Detective Guilmette that Plaintiff held out his hand when she told him she had the bribe money with her; that Plaintiff accepted the marked money in an elevator after he had prepared the affidavits that were the purpose of the bribe; and, that Plaintiff put the money in his pocket and returned to his office after Ms. Chavez left, at which point Detective Guilmette arrested him.   Under these undisputed facts, as a matter of law, Detective Guilmette had probable cause to believe that Plaintiff had just committed a crime.

Plaintiff contends that no probable cause exists because, while "he ultimately physically grasped and possessed 'as a reflex action' the $500 thrust at him by Ms. Chavez," he had "repeatedly rejected the bribe that was offered, and [] he never intended to accept the bribe."  Resp. Br., Doc. 37 at 10.  He also contends that "the 'sting' was set up against him by Detective Guilmette . . . with the Detective's full knowledge that Plaintiff was not interested in accepting any bribes." *Id.*  Despite these arguments, Plaintiff presents absolutely no evidence to support his contention that Detective Guilmette was  informed that Plaintiff had previously rejected a bribe offered by Ms. Chavez. Furthermore,   Plaintiff's post-arrest explanation of his secret innocent intent does not vitiate probable cause. *See Tanberg,* 401 F.3d at 1159 (the court examines "facts and circumstances within

the arresting officer's knowledge and of which he or she has reasonably trustworthy information" in determining whether probable cause existed to arrest); *United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989) (noting that, even if a criminal defendant later establishes that an informant lied to the officer who swears out the probable-cause affidavit, that "would not show that the affiants knowingly falsified the affidavit or recklessly disregarded the truth"). Plaintiff makes no showing that the facts set forth in Detective Guilmette's affidavit would not give rise to probable cause, or that Detective Guilmette was aware of additional facts that would undermine probable cause. Plaintiff has, therefore, failed to establish a genuine issue of material fact regarding probable cause.

Plaintiff's argument that no probable cause existed for his arrest because he was acquitted at trial also fails. It has long been established that probable cause may exist for an arrest and prosecution as a matter of law, "notwithstanding . . . ultimate acquittal." *Garcia v. United States*, No. 94-2252, 69 F.3d 547, 1995 WL 634164, *1 (10th Cir. Oct. 30, 1995) (unpublished). *See Pierson v. Ray*, 386 U.S. 547, 555 (1967) (noting that, "[u]nder the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being **mulcted** in damages if he does.")(overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Plaintiff has failed to establish a violation of his constitutional rights. Therefore the County Defendants are entitled to qualified immunity. Judgment will be granted in favor of the County Defendants on the § 1983 due-process and malicious-prosecution claims.

11

III.     **Defendant Terry Chavez is entitled to dismissal of the claims against her.**

The Federal Rules of Civil Procedure provide that,

> [i]f a defendant is not served within 120 days after the complaint is filed, the court
> . . . **must** dismiss the action without prejudice against that defendant or order that
> service be made within a specified time.  But if the plaintiff shows good cause for the
> failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added).  "The 120–day period runs from the filing of the initial

complaint; later amendments to the complaint do not change the time limit except for newly added

parties."  *Constien v. United States*,  628 F.3d 1207, 1216 (10th Cir. 2010).

The Complaint in this matter was filed on July 25, 2011, making the final date for service

November 22, 2011.  On November 22, 2011, Plaintiff sought a 30-day extension of time in which

to serve Ms. Chavez and two other Defendants, stating "that he is trying to find information to locate

the persons or representatives to be served on behalf of these three Defendants, that the process

server is confident that he will be able to successfully serve these three Defendants by December

21, 2011."  Notice of Possible Dismissal, Doc. 18.  When Plaintiff still had not served Ms. Chavez

by January 19, 2012, the Court granted his initial extension request, and then *sua sponte* permitted

a second extension, ordering the Plaintiff to effectuate service of process on Ms. Chavez "within 20

days of the date of this Notice," or the Court would dismiss the complaint against her under Federal

Rule of Civil Procedure 4(m).  *Id.*.  On February 8, 2012, the last day of his 20-day second

extension, Plaintiff gave the summons and copy of the original complaint to his process server, who,

apparently on February 10, 2012, "left [them] with employer All Star Realty after validating

employment."  Doc. 20.  Ms. Chavez never entered an appearance, nor did she file an answer to the

Complaint.

Plaintiff did not mail or otherwise serve the Amended Complaint, which was filed March 8,

12

2012, on any Defendant.  He stated therein that his electronic filing of the document into the record "on information and belief caused it to be delivered to all counsel and parties pro se, if any, of record."  Am. Compl., p.10.  Of course, at that time, Ms. Chavez was not a party "of record," there was no address for her in the CM/ECF system, and consequently the Amended Complaint was never mailed to her.  She filed her pro-se motion to dismiss in September 2012, seeking to quash the February 10, 2012 return of service, stating that she "has not been properly served."  Doc. 40. at 1.

In response, Plaintiff seeks denial of the motion because Ms. Chavez "does not allege, nor can she demonstrate, any prejudice to her resulting from the alleged inadequate service" because he "has not moved for default against Defendant Chavez and does not object to Defendant Chavez being permitted to file a late Answer to the Complaint."  Doc. 41.  The Rule, however, does not require Ms. Chavez to demonstrate actual prejudice by Plaintiff's failure to properly serve her. Plaintiff also contends that the motion should be denied because "Defendant Chavez does not allege, nor can she demonstrate, that Plaintiff was motivated by any malice or other improper motive, as Plaintiff took all reasonable steps to ensure that proper service was made," and that "[d]ismissal would be a disproportionate sanction in this case."  *Id.*  Again, the Rule does not require the Court to make a finding of malice or improper motive in failing to serve.

In reply, Ms. Chavez states that Plaintiff's process-server contacted her "for the first time" on October 18, 2012, and asked her to meet him at a gas station.  *See* Doc. 42.  She refused, but offered to meet him at her office for service of process, and called him three times to tell him when she was at the office.  As of October 24, 2012, she still had not been served with process.  *Id.*

The Court has granted the Plaintiff, who has an attorney, wide latitude and two extensions

of time in which to properly serve Ms. Chavez.  Plaintiff clearly has not taken reasonable steps to serve Ms. Chavez – he has never attempted to personally serve her as required by the federal and state rules of civil procedure.  *See* Fed. R. Civ. P. 4(e); N.M.R.A. 1-004.  Leaving a copy of the summons and complaint at a defendant's supposed place of employment is not permitted under the federal rules.  *See* Fed. R. Civ. P. 4 (e).  State rules of procedure also do not allow this approach unless the plaintiff has first unsuccessfully attempted to serve the defendant under N.M.R.A. 1-004 (F)(1) and (2), after which point a plaintiff may effectuate service by "delivering a copy of the process at the actual place of business or employment of the defendant **to the person apparently in charge thereof and** by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address **and** at the defendant's actual place of business or employment."  N.M.R.A. 1-004 (F)(3) (emphasis added).  The return of service filed on February 10, 2012 does not indicate with whom the summons and complaint were left, does not mention any mailing, and states only that the process server "left [them] with employer All Star Realty after validating employment."  Doc. 20.  Effective service of process has never been accomplished, even though Ms. Chavez clearly has not been trying to avoid service.

Plaintiff has made no argument that his continued failure to properly serve Ms. Chavez was justified by good cause.  Plaintiff did not properly serve Ms. Chavez before the expiration of Rule 4(m)'s 120-day time limit for service or within the two extensions of time granted by the Court.  The Court has previously warned Plaintiff that his failure to serve would result in dismissal.  For these reasons, the Court will quash the return of service and dismiss the complaint and amended complaint against Ms. Chavez without prejudice.  *See Constien*, 628 F.3d at 1217 (affirming dismissal without prejudice of complaint after plaintiff made unsuccessful attempts at service but failed to properly

serve within the 120-day period or the period extended by the court).

## IV. Plaintiff shall show cause why claims against Vaughn Realty should not be dismissed with prejudice for failure to state a claim.

The Court may dismiss a complaint *sua sponte* under Fed. R. Civ. P. 12(b)(6) for failure to state a claim without notice if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quoting *McKinney v. Okla. Dep't of Human Serv.*, 925 F.2d 363, 365 (10th Cir. 1991)).  The preferred practice, however, "is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim."  *McKinney,* 925 F.2d at 365.

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The only allegations of fact in the Amended Complaint related to Vaughn Realty are that Terry Chavez was employed there when she accused Plaintiff of requesting a bribe and that Vaughn Realty was "a duly licensed corporation under the laws of the State of New Mexico and doing business in Bernalillo County."  *See* Am. Compl., ¶¶ 8, 9.  Plaintiff does not make any substantive

allegations against Vaughn Realty in any of the counts.[5]

Vaughn Realty filed a voluntary bankruptcy petition for relief in 2010.  The automatic stay found in Bankruptcy Code § 362 precludes Plaintiff from continuing to prosecute this action against it or against the property of the bankruptcy estate.  *See* Doc. 22.  There is no reason, however, to maintain Vaughn Realty as a defendant in this case when the Amended Complaint is completely devoid of any factual allegations to support any claim against it.  *See Iqbal*, 556 U.S. at 678.  The Plaintiff shall, within 10 days of the filing of this Order, show cause in writing why his Amended Complaint should not be dismissed with prejudice for failure to state a claim as to Vaughn Realty.

**IT IS ORDERED** that the County Defendants' motion for summary judgment (Doc. 32) is **granted**, resulting in dismissal with prejudice of all claims against the County Defendants;

**IT IS FURTHER ORDERED** that Defendant Chavez's motion to dismiss (Doc. 40) is **granted**, resulting in dismissal without prejudice of all claims against Terry Chavez;

**IT IS FURTHER ORDERED** that the stay that has been imposed in this case, Doc. 33, is hereby lifted[6];

**IT IS FURTHER ORDERED** that Plaintiff shall, within 10 days of the filing of this Order, show cause in writing why his Amended Complaint should not be dismissed with prejudice as to Vaughn Realty.

_____

---

[5] Plaintiff only makes a general averment that that Count III is brought "against those Defendants who ARE NOT, and WERE NOT at any relevant time, employees of any governmental entity."  Am. Compl., ¶ 49.

[6] Besides Vaughn Realty, the Court notes that the only remaining Defendant at this time  in this case is Robert Raynor.

**SENIOR UNITED STATES DISTRICT JUDGE**